PK

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### ~~WESTERN DIVISION~~

Perez C.Funches

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Jason Hermeyer
Christopher Melvin
Wayne Walker
Timothy Fisher
John Craft
John varga
John Baldwin

Mark Delia
Alan Pasley
Warden Wilks
James Martens
Christine Terry
Brandi Hendrix
Jamie Weigand
Ami Watson      and C/O Burke

(Enter above the full name of ALL
defendants in this action.  Do not
use "et al.")

1:20-cv-01429
Judge Robert M. Dow, Jr
Magistrate Judge Sunil R. Harjani

PC3

Case No. _____
(To be supplied by the Clerk of this Court)

RECEIVED

FEB 2 7 2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**CHECK ONE ONLY:**

\* \* \*          **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
            U.S. Code** (state, county, or municipal defendants)

_____          **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
            28 SECTION 1331 U.S. Code** (federal defendants)

_____          **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING."  FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I.    **Plaintiff(s):**

    A.    Name: _Perez C.Funches_

    B.    List all aliases: _Tony Smith; Terrell Watson; Terrell Washington_

    C.    Prisoner identification number: _N-64546_

    D.    Place of present confinement: _Dixon Correctional Center_

    E.    Address: _2600 North Brinton Ave / Dixon,IL.61021_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

II.    **Defendant(s):**              1 of 3 pages

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

    A.    Defendant: _Jason Hermeyer_

        Title: _Optical Industry Supervisor_

        Place of Employment: _Dixon Correctional Center (2600 N. Brinton Ave)_

    B.    Defendant: _Christopher Melvin_

        Title: _Optical Industry Superintendent_

        Place of Employment: _Dixon Correctional Center (2600 N. Brinton Ave)_

    C.    Defendant: _Wayne Walker_

        Title: _(Retire) Optical Industry LeadWorker_

        Place of Employment: _(Retire From Dixon Correctional Center)_

    **NOTE:"Please See Addtitional Page To Continue Defendants Names"**

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Name Of Defendants
2 of 3

D. Defendant: Timothy Fisher
   Title: Optical Industry LeadWorker
   Place of Employment: Dixon Correctional Center (2600 North Brinton Ave)

E. Defendant:John Craft
   Title:  IDOC Lieutenant (Lt.)
   Place Of Employment: Dixon Correctional Center (2600 North Brinton Ave)

F. Defendant: John Varga
   Title: Chief Administrative officer,Warden
   Place Of Employment: Dixon Correctional Center (2600 North Brinton Ave)

G. Defendant: John Baldwin
   Title: IDOC Director
   Place Of Employment: Springfield,Illinois (1301 Concordia Court)

H. Defendant: Mark Delia
   Title: IDOC Investigation & Intelligence Unit Chief
   Place of Employment: Springfield,Illinois (1301 Concordia Court, House 1313)

I. Defendant: Alan Pasley
   Title: PREA Compliance Administrator
   PLACE Of Employment: Springfield,Illinois  (1301 Concordia Court)

J. Defendant:  (First Name Unknown) Wilks
   Title: #2 Warden Of Operations
   Place of Employment: Dixon Correctional Center (2600 North Brinton Ave)

K. Defendant: James Martens
   Title: IDOC Grievance Officer
   Place Of Employment: Dixon Correctional Center (2600 North Brinton Ave)

L. Defendant:Christine Terry
   Title: Counselor and Grievance Officer Asst.
   Place of Employment: Dixon Correctional Center (2600 North Brinton Ave)

<u>Name of Defendants</u>
<u>3 of 3</u>

M. Defendant: Brandi Hendrix
   Title: IDOC Counselor
   Place of Employment: Dixon Correctional Center (2600 North Brinton Ave)

N. Defendant: Jamie Weigand
   Title: IDOC Qualified Mental Health Professional (Q.M.H.P.)
   Place of Employment: Dixon Correctional Center (2600 North Brinton Ave)

O. Defendant: Ami Watson
   Title: IDOC Qualified Mental Health Professional (Q.M.H.P.)
   Place Of Employment: Dixon Correctional Center  (2600 North Brinton Ave)

P. Defendant: (First name unknown) Burke
   Title: IDOC Correctional Officer
   Place of Employment: Dixon Correctional Center (2600 North Brinton Ave)

### III. Exhaustion of Administrative Remedies

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A. Is there a grievance procedure available at your institution?

YES (✱✱)   NO ( )   If there is no grievance procedure, skip to F.

B. Have you filed a grievance concerning the facts in this complaint?

YES (✱)   NO ( )

C. If your answer is **YES**:

1. What steps did you take?
Plaintiff filed (11) Grievances (**Mostly Emergency**)
In This Cause Of Action

See: "Attached Copies of Grievances "

2. What was the result?
The Dixon C.C. Chief Administative Officer found
all but (Grievance dated 6-11-18) to be non-emergency;
also, some of the named Defs. either works in the Grievance
Office, **and/or** has to process the Grievance (such as a Counselor).
**Thus**, these Defs. tends to **prolong** the process; **not** return
Grievances; and or **not adequately investigate claims.**

3. If the grievance was not resolved to your satisfaction, did you appeal? What was the result (if there was no procedure for appeal, so state.)
Plaintiff sent all the grievances to the IDOC Director
for review, because the grievances are related to
**retaliatory** conduct on behalf of State Employees,
and the act of **cover-up** (other State Employees not
wanting to take appropriate actions against another Employee)
Grievances were returned by the ARB stamped receive and
recommending that the grievances go through Grievance Office.

D. If your answer is NO, explain why not:
N/A

3

E.   Is the grievance procedure now completed?   YES ( ). NO ( )
     Plaintiff exhausted his Administrative Remedies through the "EMERGENCY
     GRIEVANCE PROCEDURE" and the ARB had the opportunity to review

F.   If there is no grievance procedure in the institution, did you complain to
     authorities?   YES ( ) NO ( )

G.   If your answer is **YES**:

     1.   What steps did you take?
                                        N/A
          _____

          _____

          _____


     2.   What was the result?
                                        N/A
          _____

          _____

          _____


H.   If your answer is **NO**, explain why not:
                                        N/A
     _____

     _____

     _____

4

IV.    List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois):

   A.    Name of case and docket number: _Funches v. Ebbert (S.D. Ill.)_
                _638 F Supp.2d 1014_

   B.    Approximate date of filing lawsuit: ___2007___

   C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: ___
       _Just me (Perez Funches)_

   D.    List all defendants: ___Ms.Ebbert___

   E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): ___Southern District Illinois___

   F.    Name of judge to whom case was assigned: ___(unknown)___

   G.    Basic claim made:___Denied Access To Court___

   H.    Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): ___lost at trial___
      _No Appeal was taken._

   I.    Approximate date of disposition: ___2009 or 2010___
       NOTE:(Please see attached page with two other named cases)
            1 of 2

IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.

<u>Continue List Of Lawsuits</u>
<u>2 of 2</u>

A. Name of case and docket number: Funches v. Love (Docket # unknown)
B. Approximate date of filing lawsuit: 2007
C. List all Plaintiffs: Perez Funches
D. List all Defendants: Chaplian Timothy Love
E. Court in which lawsuit was filed:Southern District of Illinois
F. Name of judge to whom was assigned: unknown
G. Basic claim made: Denied right to practice religious faith
H. Disposition of the case: lost at a jury trial
I. Approximate date of disposition: 2010




A. Name of case and docket number: Funches v. Jones (Docket # unknown)
B. Approximate date of filing lawsuit:2010 or 2011
C. List all Plaintiffs: Perez Funches
D. List all Defendants:  Chaplian Jones; Warden Chandler; Warden O'Neal
E. Court in which lawsuit was filed:Northern District of Illinois -Western Division
F. Name of judge to whom was assigned: Magistrate I.Johnston
G. Basic claim made: denied right to practice religious faith
H. Disposition of the case: enter into settlement with defendants
I. Approximate date of disposition: 2013 or  2014

5a

V.     Statement of Claim:

State here as briefly as possible the facts of your case. Describe precisely how each defendant is involved. Include also the names of other persons involved, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

DEPRIVED LIBERTY INTEREST AND RETALIATION 1st & 14th U.S.C.A. AMENDMENT VIOLATION [Plaintiff signed two (90) days "Program Sentencing Good Time Contract (Jan.1,2018 till April 1,2018 and April 1,2018 till July 1,2018), and should've earned (45) days credit per contract. However, he only received (38) days for one and (26) days for the other, thus, when Plaintiff spoke up orally and filed Grievances, he was retaliated against and eventually terminated from his "Good Time Earn Assignment".]

1. On or about April 12,2018 at approx. 11:oo a.m. Plaintiff spoke with Def.Hermeyer concerning receiving the full (45) days earned "Program Sentencing Good Time Credit", he (Plaintiff) signed a contract for dated Jan.1,2018 thur April 1,2018 while working in the Dixon C.C. Optical Industry. The earned program sentencing good time credit is pursuant to 730 ILCS 5/3-6-3 (4) (WEST Jan.1,2018).

2. Def.Hermeyer was allowing selective Inmate Industry Workers to work a (5) day work week (**on Fridays some inmates earning good time and mostly those inmates not under good time contract working**); yet, Def.Hermeyer would not arrange the "Good Time Goal Statement (**which reflects the crediting for good time in accordance to work hours and attendance,** pursuant to 20 Ill. Admin. Code 107.530; 107.540 (b);also, Administrative Directive (A.D) 01.17.130 (10),(11),& (12) ), so Plaintiff and those similar situated under program good time contract could still receive the **full** (45) days credit.

NOTE: "The Good Time Contract initiately

requires 4hrs. per day and 5 days ;
**however,** the 'Goal Statement' can

be changed to reflect what is needed
to fulfill said contract"

Plaintiff and those similar situated under "Program Sentencing

Good Time Contract" was receving **over** 20 hrs. a week with only being

allowed to work (4) day work weeks; **however,** because Fridays were

being decided by Def.Hermeyer (**as to who he wanted to report to work**),

then anyone not working on Fridays under good time contract was being

denied to receive **full contractual good time credits** for attendance

reasons only that **can not** be conduce to that of the Plaintiff or

those similar situated not being allowed to work on Fridays. **Therefore,**

the breach of Plaintiff's "Program Sentencing Good Time Contract"
was deliberately being caused by Def.Hermeyer.


3. Plaintiff tried explaining to Def.Hermeyer that "he (Def.) **was not**

acting in accordance to the 20 Illinois Administative Code and the

Administrative Directive as they relate to Industry Program Good

Time Contract." Def.Hermeyer became highly irritable making statements

about "who he didn't work for (IDOC) and who he didn't have to report

to;also, how he will continue to run things as he see fit concerning

who will work on Fridays to earn good time and who wouldn't."
see:(Attached Copy of Plaintiff's Grievance dated 4-27-18)


NOTE: "Please See Attached Pages Marked 7a-7i To Continue Claims"


VI.   Relief:

7

4. Plaintiff left Def.Hermeyer's office and on April 13,2018 reported to
Def.Warden Wilks concerning "how he (Plaintiff) was **fulfilling** the 20hrs.
require in the Industry Program Good Time Contract within (4) work days
as oppose to (5) work days, **and** how the 5th work day (Fridays) was being
reserved for Def.Hermeyer's selective work crew (**most of which was not
even receving good time**) and how Plaintiff was not being awarded full
good time credit because of the 5th day attendance **only**, which is unfair
and not in accordance with 20 Ill. Admin. Code regarding good time credits."
Def.Wilks stated: "Plaintiff was right and should be awarded full good time
credit if in fact the 20 hours require was being meet each week";therefore,
he (Def.) would speak with Industry Supt. Def.Melvin. However, Def.Wilks
didn't address this issue and to no avail did anything change concerning
Plaintiff receiving his earned full good time credits. Basically Def.Wilks
turned a blind eye to Plaintiff's deprived liberty interest.

5. On April 14,2018 Plaintiff went to the Institution's law library and made
copies of the 20 Illinois Administrative Code and Administrative Directives
relating to "Industry Program Sentencing Good Time Credits."

6. On April 16,2018 while at work Plaintiff showed the Inmate Foreman Cuevas #B-43101
the copies of the 20 Ill. Admin. Code and A.D. relating to the good time contract
and how by "changing the 'Goal Statement' to reflect the 20 hours accomplish
within the (4) work day week could benefit those not selected  to  work on
Fridays, thus, full good time credits can still be awarded."  Plaintiff
requested the Inmate Foreman to explain this to Def.Hermeyer "how it is
necessary and only fair to change the 'Goal Statement' to reflect the work
hours being accomplish, so that Plaintiff and those similiar situated completely
fulfilling the require 20 hours could be awarded full good time credit
(**eventhough they are not being allowed to work on Fridays**)."

7. On April 17,2018 the inmate Foreman Cuevas #B-43101 notified Plaintiff that
"Def.Hermeyer wasn't trying to hear anything coming from me regarding doing
the rightthing about awarding of 'Program Good Time' and Fridays."

8. On April 18,2018 Industry LeadWorker Def.Fisher called to Plaintiff's Housing Unit 60-45 and order an **unauthorize** shakedown of Plaintiff's cell seeking alleged Industry contraband with hopes of being able to terminate Plaintiff from his Industry job. The Officer who conducted the cell shakedown was Mr.Mammosier (**witness**). Moreover, their is **no** IDOC's Polices or Procedures that "grant a civilian (Def.Fisher) the **authority** to order another Correctional Officer to shakedown an inmate cell", because such authority has to be granted by a Shift Commander Officer. Def.Fisher was acting on behalf of Def.Hermeyer merely because Plaintiff had been inquiring about the awarding of his good time credits. see: (Attached Copy of Plaintiff's Grievances dated 4-27-18 and 6-14-18)

9. On May 1,2018 Plaintiff filed an "Emergency Grievance" dated 4-27-18 regarding "Retaliation and Unprofessional Staff Conduct" concerning Def.Hermeyer.

10. On May 3,2018 Def.Melvin reassigned Plaintiff's industry assignment of almost (4) years to a entry level assignment, which created a decrease in Plaintiff's work hours (pay). Def.Melvin's actions of reassigning Plaintiff from the Frame Dept. where Plaintiff had successfully worked for almost (4) years and received (2) pay increase promotions had only occurred as a **retaliatory act** because of the "Grievance dated 4-27-18 filed against Industry Supervisor Def.Hermeyer."
   see:(Attached Copy of Plaintiff's Grievance dated May 3,2018)

11. On May 9,2018 Plaintiff received only (38) days awarded "Program Sentencing Credit" from a (90) days Good Time Contract he signed for Jan.1,2018 thur April 1,2018. Thus, Plaintiff should've been awarded the full amount of (45) days credit from the aforementioned good time contract pursuant to 730 ILCS 5/3-6-3 (4) (WEST 1-1-18):
   " *** the Department shall multiplied by a factor of 1.25 for Program participation before Aug.11,1993 **and** 1.50 Program participation on or after that date *** ."
   (3-6-3 (4) (WEST 1-1-18) )

7b

Therefore, Plaintiff was entitle to .50 days of Program participation
for the (90) days Good Time Contract he signed for the months of
Jan.1,2018 thur April 1,2018, which should've earned him (45) days
good time credit (especially when Plaintiff had completed the 20hrs.
work week **and** the 5th day of <u>attendance</u> was being **breached** by Def.Hermeyer).
   see:(Attached Copy of plaintiff's Grievance dated May 9,2018)

**12.** On or about April 1,2018 Plaintiff signed a second (90) day Program
Sentencing Good Time Contract for the months of April 1,2018 thur
July 1,2018;**however,** "Plaintiff only was awarded (26) days of good time
credit when he **was not** the cause of the <u>breach</u> that created the shortage
of him not being awarded the <u>full</u> <u>amount</u> of (45) days from said contract."
see: (Attached Copy of Plaintiff's Grievance dated June 25,2018 #18-7-E2)
Moreover, neither of the (2) contracts Plaintiff had signed contained
a **"Goal Statement"** for the Plaintiff to sign **which** setforth the "require conditions
the Plaintiff had to fulfill in order to be awarded the good time", thus
without a signed "Goal Statement" in accordance with the 20 ILL. Admin.
Code 107.530; 107.540 (b); also, Admin. Directive 01.17.130 (10),(11),&
(12), then "the Def.Hermeyer and Def.Melvin are allowed to **breach** the
good time contract and deprive Plaintiff's liberty interest to receive
full good time credits pursuant to 730 ILCS 5/3-6-3 (4) (WEST 1-1-18)."

**13.** On May 10,2018 a full shop Industry meeting was call to address issues
regarding "Good Time" and the coming "Fiscal Year Inventory Schedule",
at said meeting Def.Melvin alleged that a "five day work week will begin
after the return from Inventory break on or about July 9,2018." Also,
Def.Hermeyer announced how "he would select the inmates he wanted to
work during the (3) weeks of Inventory", and after Def.Hermeyer spoke
concerning his Inventory plans...Def,Melvin closed the meeting with
stating:"any further questions ones may have bring to the attention of
the Inmate Foreman Mr.Cuevas #B-43101, and he will be speaking with
the (Defs.) following the meeting and those questions will be addressed
then."

7c

**14.** Plaintiff soon after the shop meeting requested the Inmate Foreman Cuevas
to address the issue of "would he (Plaintiff) be credited his good time
for all days leading up to July 9,2018, **and or** should he continue filing
<u>Grievances</u> regarding being deprived good time credits?"
Inmate Foreman Cuevas #B-43101 returned from his meeting with Def.Hermeyer
and Def.Melvin stating:"They (named Defs.) said continue to file your Grievances."
Moreover, at approx. 10:30 a.m. of said date of shop meeting, as Plaintiff
was leaving work he was stop by Def.Hermeyer and order to report to work
the next day (**which will be on** a <u>Friday</u>).


**15.** On May 11,2018 when Plaintiff reported to work (<u>Friday</u>) he notice a message
written on the Bulletin Board reading: "Effective Monday May 14,2018 The
Shop will start    working (5) Days A Week." Plaintiff was escorted by
Inmate Foreman Cuevas #B-43101 too the Tool Cage and requested to sign-out
a **scraper**, and was then lead to the Lab by said Inmate Foreman and told:
"Per Def.Hermeyer orders, Plaintiff needed to scrape the polish off the
floor on his knees around the Polish Machinery and then clean the polish
off said machines." (This was a assignment giving to Plaintiff to perform
for (4) hours an order to require the **hours** needed for that day to earn
good time. **Moreover,** no other Inmate worker had been or was require to
do this work assignment, and their is/was modern day equipment to use,
to do this type of job more suffice and easy.)
As Plaintiff tried to perform the aforementioned duties, he notice LeadWorker
Def.Walker walk by several times with a devilish smirk on his face while
observing Plaintiff work on his knees;**also,** at some point while working
Plaintiff had an errie feeling like someone was watching him and when he
looked over his shoulder while still on his knees, he notice "Def.Hermeyer
standing in the door entrance to the Lab watching with the same smirk on
his face observing Plaintiff perform this **"corporal type of task"."**
Plaintiff had **no** other choice (at that time & day) but to fellow
instruction and perform the work assignment an order to **earn a day credit**
**of good time**;however, said assignment was giving to Plaintiff as an
"act of retaliation; humiliation; intimidation; and as a way to exort
authority towards Plaintiff from Def.Hermeyer."

CRUEL AND UNUSUAL PUNISHMENT AND RETALIATION 1st &
8th U.S.C.A. AMENDMENT VIOLATION [Plaintiff was
subjected to repeated humilating; intimidating;
harassing; and self-gratification NonAdministrative
unauthorize searches conducted by Civilian (non-
security)  Employees working within IDOC]

16. As Plaintiff would leave from work each day at approx. 10:10 a.m. or
10:30 a.m. Def.Hermeyer would notice and then order Plaintiff and
those departing along with him (Plaintiff) to become subjected to
a **search** before leaving. Moreover, Def.Melvin has been present a
few time watching these searches take place conducted by "Def.Hermeyer,
Def.Walker, and Def.Fisher".  As well, Def.Hermeyer and Def.Walker had
started getting a little to physical with the alleged pat and frisk.

17. On June 11,2018 at approx. 10:10 a.m. Plaintiff was leaving work when
Def.Hermeyer notice and order Plaintiff to be subjected to a search;
however, Def.Hermeyer allowed one inmate worker to leave unsearched
and another Inmate Borgmann #R-47665 (Witness) who was directly in
front of Plaintiff was barely searched by Def.Hermeyer.  **Yet,** "Def.Hermeyer
starting searching Plaintiff in a disrespectful sexual in nature manner
(gropping Plaintiff's groin area and squeezed Plaintiff's upper chest,
with rubbing his (Def.'s) hand over Plaintiff's back pocket area),
Def.Hermeyer's  search of Plaintiff was done in a harassing, intimidating,
sexual, and retaliating manner." see (Attached Copy of Plaintiff's
Grievance dated June 11,2018)
**Moreover,** Plaintiff left work in a torment and hysteria state and reported
the afroementioned staff misconduct to Lt.Haime (Witness), **and** all the while
Plaintiff was trying to explain to Lt.Haime what had just taken place
"tears of anger and humiliation  flowed from his (Plaintiff's) eyes."
Plaintiff was requested by Lt.Haime to file a "PREA" claim against
Def.Hermeyer, which Plaintiff did with said Lt. assistance.
Plaintiff was escorted by Lt.Haime to the Health Care Unit to be seen
by Mental Health Worker Def.Weigand and then secondly seen by the
Medical Staff R/N Ms.Jackson (Witness);**also,** third Plaintiff was seen by
I.A. Officer Def.Craft.  Def.Craft instructed Plaintiff not to return
to work until he (Def.) could look into the matter, and Lt.Craft stated:

"he couldn't believe the Industry staff could be so stupid to continue conducting themselves this way, because he was told that the **sexual game-playing** over there had stopped and/or atleast slowed down". Def.Craft knew this was not the first report of <u>sexual misconduct</u> that had been made against certain Dixon C.C. Industry Personnel (**mainly that of Def.Hermeyer and Def.Walker**)".

18. Plaintiff went to the Institution's Law Library to review the Industry's Administrative Directives concerning "civilian conducting inmate searches", and learned that "per A.D. 01.17.101 G-3 (4,e):[ The Chief Administrative Officer (**of the facility**) shall provide <u>security staff</u> as **needed** to supervise non-productive activites such as offender movement, shower, and <u>searches</u>.]" Therefore, all the alleged <u>searches</u> Plaintiff had to endure by Def.Hermeyer, Def.Walker, and Def.Fisher were **"nonadministrative unauthorize searches being conducted for the sole purpose of intimidation, harassment, personal gain/touching - feeling satisfaction, and retaliatory punishment."** see:(Attached Copy of Plaintiff's Grievance dated 6-14-18)

> **DENIED DUE PROCESS** 14th U.S.C.A. **AMENDMENT VIOLATION** [Plaintiff **was** denied due process when other State Employees while acting under color of law "**Turned A Blind Eye To Staff Misconduct**", thus refusing to do their job duties of "recording & documenting " and "adequately investigating claims of misconduct by other State Employees"; thereby, becoming Co-Conspirator to their Co-workers actions]

19. Plaintiff tried requesting Def.Ms.Hendrix, Def.Marten, and Def.Ms.Terry to adequately **investigate** his (Plaintiff's) claims of "unprofessional staff misconduct and retaliation";**however,** the named Defendants knowingly ignore and/or didn't want to believe Plaintiff's allegations concerning State Employees working under the color of law, so the Defendants choose

to turn a blind eye to other State Employees' unprofessional misconduct;
thereby, the named Defendants did little to nothing at all, thus,
denying Plaintiff due process and equal protection thats guarantee
under the United States Constitution.
see:(Attached Copy Of Plaintiff's Cover-Letter dated June 2,2018 and
Grievance dated June 25,2018 #18-7-E1)

20. Plaintiff remained for days (**after being sexually harass**) stressed, mentally
conflicted, sad/w much anxiety, and not being able to properly sleep at
night. Therefore, he (Plaintiff) sought mental health counseling [seen by
R/N Ms.Wick (Witness) on 6-19-18 and referral was made to the Mental
Health Dept.];also, on June 21,2018 Plaintiff requested his Social Worker,
Ms.Jaquet (Witness) to assist him with receiving mental health counseling
for his anxiety (referral was allegely made to the Mental Health Dept.).
**However,** to **no** avail would anyone from the Mental Health Dept contact
Plaintiff. see:(Attached Copy Of Plaintiff's Grievance dated June 25,2018
#18-7-E1)

21. On July 2,2018 Plaintiff went on a "Hunger Strike" seeking mental health
care. On July 3,2018 while on said strike Plaintiff spoke with Mental
Health Professional,Dr.Adydan (Witness) who stated:"she would make a
referral to the person assigned to Plaintiff's last name alphabet and
request them to see Plaintiff soon regarding mental health issues."
Plaintiff remained on the hunger strike until July 5,2018 when he was
assigned to speak with Mental Health Professional,Def.Ms.Watson.
**Also,** while on the hunger strike Plaintiff's medical needed back brace
was taken by Def.Burke, which said Def. revealed weeks later that his
retaliatory acts of taking Plaintiff's medical back brace was done
apparently because "Plaintiff had filed a "PREA" claim against a
staff member." see: (Attached Copy Of Plaintiff's Grievance dated 7-23-18   )

7g

22. Plaintiff learned after seeking copies of his mental health records
that neither Def.Ms.Weigand or Def.Ms.Watson had **"recorded nor
documented"** their mental health session with him (Plaintiff), **and**
it became clear "how when Plaintiff was speaking with the named
Defendants why they appear and acted **unacceptive** as to his complaints
concerning staff misconduct." Moreover, Plaintiff tried explaining
to the named Defs. (Mental Health Staff) how "he had been targeted
by the Industry Staff, because he spoke up for his earned good time,
and how it lead to inappropriate searches and not being allowed to
return to work. **Moreover,** how not being allowed to earn good time
now is affecting him not being able to go home soon to his very ill
daughter and elderly Mother;thereby, causing him to be under more
stress and anxiety." see:(Attached Copy of Plaintiff's Grievance dated
Aug.28,2018)


23. On or about July 9,2018 Def.Melvin had the Institution's Placement Officer
to **unassign** from the Dixon C.C. Optical Industry while Plaintiff's
Plaintiff
"PREA" claim was still pending. Def.Melvin terminated Plaintiff from  the
Optical Industry Job Assignment **only** because "Plaintiff  had filed
a "PREA" claim against Industry Supervisor,Def.Hermeyer **and** because
Plaintiff was the **Whistle Blower** as well in a Aug.4,2017 & Aug.5,2017
"PREA" allegation against Def.Melvin, Def.Hermeyer, and Def.Walker
regarding sexual misconduct on other Inmate Industry Workers (**mainly
one particular inmate worker (who) was ADA name Daniel Lord).**
 see:(Attached Copy of Plaintiff's Grievance dated July 11,2018)

7h

24. Defendants "Chief Administrative Officer Warden Varga; I.A. Officer,Lt.Craft;
PREA Coordinator Alan Pasley; IDOC Director Baldwin; and Springfield IDOC's
Investigation & Intelligence Unit Chief,Mark Delia" **all** choose to ignore
**and/or** turn a blind eye to the **sexual misconduct** "PREA" claims made on
Aug.4,2017 and Aug.5,2017 regarding Inmate Workers being targeted for
sexual games by the Optical Industry Personnel. see:(Attached Copy of
Plaintiff's Grievance dated June 11,2018) **Also,** the sexual miscondut claim
made  on Oct.4,2017 by an Inmate Worker Richard Serrano #B-77778 involving
the same afroementioned State Employees (Def.Hermeyer, Def.Melvin, and
Def.Walker). see: (Attached Copy of Grievance dated 10-4-2017/w photo)
The named Defendant did little to nothing regarding the sexual misconduct
claims made against State Employees working under the color of law. **Thereby,**
on June 11,2018 when Plaintiff became a **victim** of **sexual misconduct** by
Def.Hermeyer and made a "PREA" claim, "the same named above Defendants
continued  to **"turn a blind eye"** while they were working under the color
of law, to this type of unprofessional staff misconduct;therefore, condoning
"Plaintiff to be subjected to retaliation acts and victimize to sexual
harassment." see: (Attached Copy of Plaintiff's Grievance dated Aug.21, 2018

## CLOSING

25. All the named Defendants in this cause of action while acting under
the color of law in their offical capacity knowingly and intentionally
violated Plaintiff's 1st, 8th, &  14th constitutional amendments in
one since or another.

7i

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Perez C. Funches

)
)
Plaintiff          )
)
v.               )
Janson Hermeyer, et al.      )
)
Defendant         )

**United States District Court**
**Northern District of Illinois**

## COMPLAINT

Complaint Under The Civil Rights Act,
Title 42 Section 1983 U.S. Code

See: "Attach Complaint (1 of 20 pgs.)"

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

State briefly exactly what you want the court to do for you. Make no legal arguments.
Cite no cases or statutes.

Plaintiff seeks compensatory damages from each named defendant
in their offical capacity while acting under color of law;

also, Plaintiff seeks punitive damages from each named
defendant in their offical capacity while acting under
color of law.

The amount of said sought damages shall be determine later.

Moreover, Plaintiff seeks a jury trial in this cause of action.

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this
Complaint are true to the best of my knowledge, information and
belief. I understand that if this certification is not correct, I may be
subject to sanctions by the Court.

Signed this __Feb.__ day of __27__ , 20 __20__

_Perez C. Funches_
(Signature of plaintiff or plaintiffs)

Perez C.Funches

(Print name)

N-64546

(I.D. Number)

Dixon Correctional Center →

2600 North Brinton Ave →

Dixon,Illinois 61021 →

(Address)

→ Now Released From IDOC
( MSR )
1165 N. Milwaukee Ave
Chicago,Il.60642 (Apt 2A)

8