UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEREZ C. FUNCHES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:20 C 50088 |
| | ) |
| JASON HERMEYER and | ) Judge Rebecca R. Pallmeyer |
| CHRISTOPHER MELVIN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In February 2020, after he was released from Dixon Correctional Center, Plaintiff Perez Funches brought this suit against more than a dozen individuals for constitutional violations that he alleges occurred during his incarceration. Judge Reinhard of this court dismissed a number of claims and defendants at initial screening. (Order [32] at 5.) What is left of the case are two claims against two Defendants: a First Amendment retaliation claim against Defendants Jason Hermeyer and Christopher Melvin, and an Eighth Amendment sexual assault claim against Hermeyer alone. Defendants now move for summary judgment [89]. For the reasons explained below, the motion is granted.

## BACKGROUND

### I. Local Rule 56.1

The court notes, first, Plaintiff Funches's noncompliance with Federal Rule of Civil Procedure 56 and Local Rule 56.1. Local Rule 56.1 requires that the party moving for summary judgment file "a supporting memorandum of law" and "a statement of material facts" that attaches any cited evidentiary material. N.D. ILL. L.R. 56.1(a)(1)–(2). The nonmovant may then respond by filing his own memorandum of law and his own statement of facts that admits or disputes the facts asserted by the moving party. N.D. ILL. L.R. 56.1(b)(2), (e)(1)–(2).

Consistent with these rules, Defendants filed, along with their motion for summary judgment, a supporting memorandum of law [91] and a statement of undisputed material facts [90]. Defendants also served on Funches a Local Rule 56.2 Notice [93], explaining the requirements for a pro se litigant opposing summary judgment. See N.D. ILL. L.R. 56.2.

Despite that Notice and several extensions of time to respond, Funches has never filed either a responsive memorandum of law or a responsive statement of facts.[1] His failure to follow the Local Rules "has consequences." *Daniels v. Janca*, No. 17 C 906, 2019 WL 2772525, at *1 (N.D. Ill. July 2, 2019). Specifically, Funches's non-response to Defendants' statement of facts means that those statements "may be deemed admitted." N.D. ILL. L.R. 56.1(e)(3). In other words, the court has the discretion to accept as true the facts set forth in Defendants' statement to the extent those facts are "supported by admissible and docketed evidence." *Daniels*, 2019 WL 2772525, at *2 (quoting *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) (court may accept movant's statement of facts as undisputed where nonmovant fails to comply with Local Rule)); *see also Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) ("[D]istrict courts are [not] obliged in our adversary system to scour the record looking for factual disputes." (quoting *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001))); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("[W]hether to apply the [local] rule strictly or to overlook any transgression is one left to the district court's discretion." (quoting *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995))); *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011) (facts not contained in Rule 56.1 statements may be disregarded). Similarly, Funches's failure to file a responsive memorandum of law means that he has waived any counterarguments he might have

---

[1] The original briefing schedule set a date of December 7, 2023 for Funches's response [94]. When he failed to meet that deadline, Magistrate Judge Schneider sua sponte extended that deadline to January 17, 2024 [95]. Shortly before that date, Funches moved for a further extension, which Magistrate Judge Schneider granted, setting a new response date of March 11, 2024 [97, 98]. Judge Schneider later granted two further extensions—to April 22, 2024 and May 28, 2024—but cautioned that the fourth extension would be "final" [99, 100, 102, 103].

made to Defendants' motion.  *See Bradley v. Village of University Park*, 59 F.4th 887, 897–98 (7th Cir. 2023) (party waives counterarguments by failing to respond).

This does not mean, however, that Defendants are automatically entitled to summary judgment.  Even where the nonmovant fails to comply with Local Rule 56.1(b)(2) and fails to offer any counterarguments, the movant "must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).  Thus, while the only facts under consideration are those asserted by Defendants, the court still views those facts, and draws all reasonable inferences therefrom, in Funches's favor.  *See id.*

## II.     Material Facts

Funches was in the custody of the Illinois Department of Corrections ("IDOC") from 1993 to 2019, and was at all relevant times to this case incarcerated at Dixon Correctional Center ("Dixon").  (Defs.' L.R. 56.1 Statement [90] ¶¶ 1–2.)  As part of a program called Illinois Correctional Industries, Dixon operates an Optical Lab—an eyeglass manufacturing facility— where incarcerated prisoners are employed.  (*Id.* ¶ 7.)  During the timeframe relevant to this case, Funches worked in the Frames Department of the Optical Lab; Defendant Melvin served as the Optical Lab's Superintendent, overseeing daily operations, staffing patterns, security measures, and production schedules; and Defendant Hermeyer worked at the Lab as an Industries Supervisor, checking inventories and conducting pat-downs of prisoners as they exited the Lab.  (*Id.* ¶¶ 4–6, 8–9, 34.)

In 2018, prisoners working through Illinois Correctional Industries, including at the Lab, could earn credits toward early release under Illinois law.  (*Id.* ¶¶ 16–20 (citing 730 ILCS 5/3-6-3(a)) and Ill. Admin. Code. tit. 20, § 107.520(d) (effective Feb. 1, 2013).)  The number of credits a prisoner could earn was based, in part, on how many hours and days he worked and whether the work was considered "full-time," meaning at least four hours per day for five days per week. (*Id.* ¶¶ 19–20.)  Until late 2017, the Lab operated five days per week, and prisoners could "on most occasions" work at least four hours each of the five days.  (*Id.* ¶ 21.)  Beginning in late 2017,

however, the Lab saw a decline in demand for the eyewear products it manufactured, so Illinois Correctional Industries instructed the Lab to reduce operations to just four days per week. (*Id.* ¶¶ 22–23.) As a result, Funches and other similarly situated prisoners suffered a decrease in the hours they worked at the Lab. (*Id.* ¶ 26.)

In January 2018, Funches "signed an Earned Good Conduct Credit Determination for work in the Correctional Industry Program at Dixon Correctional Center with a goal period of 90 days." (*Id.* ¶ 27.) On April 1, Melvin "approved a recommendation that [Funches] receive 75 days of earned program sentence credit"—15 days fewer than Funches had expected. (*Id.* ¶ 28; Funches Dep., Defs.' Ex. 1 [90-1], 186:6–8.) The next day, Funches signed another Earned Good Conduct Credit Determination, again with a goal of 90 days. (Defs.' L.R. 56.1 Statement ¶ 29.)

Ten days later, on April 12, Funches confronted Hermeyer about the decision to change from a five-day to a four-day operating schedule and the effect this change had on Funches's credits toward early release. (*Id.* ¶ 30; April 27 Grievance, Defs.' Ex. 2 [90-2] at 1–3.) On April 27, Funches prepared a written grievance, complaining that he and other prisoners working in the Lab were not receiving the full good-time credit for which they were eligible under their 90-day contracts because of the change from a five-day to a four-day operating schedule. (April 27 Grievance at 1–3.) In the grievance, Funches alleged that, on April 12, he had confronted Hermeyer about the impact of the scheduling changes on Funches's accumulation of credits; that Hermeyer had been "irrational," "irritable," and combative when challenged on the schedule; and that Hermeyer had refused to make any schedule changes or to otherwise grant Funches all of the credits to which he believed he was entitled. (*Id.*) Funches also described how, on April 18, his cell had been "tossed-up" and "ransack[ed]," in what Funches believed was a shakedown in a search for contraband that might justify terminating his employment at the Lab. (*Id.*)

On June 1, Hermeyer began an inventory check at the Lab and observed discrepancies in the recorded inventory counts for glasses frames. (*Id.* ¶¶ 32–33.) Hermeyer and Melvin suspected that Funches "may have been misappropriating, misplacing, or stealing frames," so

4

Melvin moved Funches to another department within the Lab. (*Id.* ¶ 35.) On June 10, Funches again confronted Hermeyer, as well as Melvin, about the four-day work week. (*Id.* ¶ 36.) Melvin and Hermeyer explained that, as ordered by Correctional Industries Senior Management, the Lab would not be returning to a five-day operating schedule. (*Id.*)

On June 11, when Funches was leaving the Lab at the end of his shift, Hermeyer patted him down, as he had done on numerous prior occasions, "to see if anything was concealed" or "if anything was inside [his] pockets." (*Id.* ¶¶ 10, 39–40, 58.) Pat-downs of this kind were conducted daily as prisoners left the Lab when their shifts were over. (*Id.* ¶ 11.) The search of Funches lasted approximately 10 seconds and was conducted in the presence of "dozens of witnesses." (*Id.* ¶¶ 12–13, 65.) Although there was incidental contact between the outside of Hermeyer's hand and Funches's groin area, Hermeyer maintained in a declaration that he did not deliberately touch Funches's genital or private areas. (*Id.* ¶¶ 61–63 (citing Hermeyer Decl., Defs.' Ex. 3 [90-3] ¶ 59).) At the time of the pat-down, Hermeyer had no knowledge of any grievances filed by Funches, including the April 27 grievance discussed above. (*Id.* ¶ 38.)

Nonetheless, Funches reported Hermeyer for inappropriately touching him. (*Id.* ¶ 41.) An internal-affairs investigation was initiated, and Funches was removed from the Optical Lab pending completion of the investigation. (*Id.* ¶ 42.) On June 30, Melvin approved a recommendation that Funches receive an additional 52 days of earned program sentence credit. (*Id.* ¶ 45.)

On July 24, Internal Affairs concluded, after interviewing several other prisoners who witnessed the pat-down, that Funches's allegations against Hermeyer were "unsubstantiated." (*Id.* ¶ 47.) That same day, the Assistant Chief Executive Officer of the Optical Lab, Richard Mautino, made the decision to terminate Funches's participation in the earned-credit program at the Lab. (*Id.* ¶ 48; Melvin Decl., Defs.' Ex. 4, [90-4] ¶¶ 22–25.) Mautino's decision overrode the views of Melvin and Hermeyer, who "were prepared to schedule [Funches] again for work so he could continue earning credit." (Melvin Decl. ¶ 23.)

5

**LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lord v. Beahm*, 952 F.3d 902, 903 (7th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering whether "a fact cannot be or is genuinely disputed," the court may consider, among other materials, depositions, affidavits, declarations, stipulations, admissions, and interrogatory answers. FED. R. CIV. P. 56(c)(1)(A). The court views all facts and draws all reasonable inferences in the light most favorable to the nonmovant. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017). The court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" when making its ruling. *Reinebold v. Bruce*, 18 F.4th 922, 927 (7th Cir. 2021) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

**DISCUSSION**

**I.  Sexual Assault Claim**

Funches's Complaint frames his claim relating to the June 2018 pat-down search as a violation of the Eighth Amendment. (Compl. [33] at 15–19.) A sexual assault on a prisoner may come within the Eighth Amendment's prohibition of "cruel and unusual punishments," but the Seventh Circuit has recently recognized that the Fourth Amendment may also serve as the proper vehicle for a prisoner to challenge a sexualized search. *See Henry v. Hulett*, 969 F.3d 769, 780 (7th Cir. 2020) (en banc) (concluding "that the applicability of the Fourth Amendment" in prisons "does not compromise the heightened standard of the Eighth [Amendment]" in the same context). While "the Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights," the protections they afford to prisoners nonetheless "co-exist inside the walls of a prison . . . ." *Id.* at 780–81. The court will consider both constitutional provisions in this ruling.

6

### A. Eighth Amendment

"The Eighth Amendment safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Henry*, 969 F.3d at 781 (citing *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). Thus, "[a]n unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights" under the Eighth Amendment. *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). The alleged assailant's "subjective intent . . . , unless admitted, has to be inferred rather than observed," for "judges and jurors are not mind readers." *Id.* at 643–44.

Funches has advanced no evidence that would allow a reasonable inference that Hermeyer intended his pat-down search on June 11, 2018, to humiliate Funches, gratify himself, or in any sense punish Funches. Hermeyer and the other Lead Workers conducted the pat-down of Lab workers in order to search for contraband, including items that might pose a security threat and inventory that may have been stolen from the Lab. (Hermeyer Decl., Defs.' Ex. 3 [90-3] ¶¶ 41-42.) And there is no affirmative evidence that Hermeyer's pat-down of Funches was sexualized. Hermeyer followed standard procedures, and his hands only incidentally came into contact with Funches's genital or private areas. Indeed, at his deposition, Funches himself never suggested that there was anything particularly untoward about the June 11 pat-down; rather, he seemed to contend that all pat-down searches that involve the groin area are inherently sexual and inappropriate:

> Q. What instances of inappropriate touching are you alleging as to Mr. Hermeyer?
>
> A. When you rubbing up a man's leg all the way up until his groin area, as if you seeing if something there, I don't think that's appropriate to be there – when you go down, rubbing down the backside of a man's pants and going over his back pocket or when you come up here and rub the chest.
>
> . . . .
>
> Q Anything else that . . . was sexual in nature . . . ?

7

>    A.   I just told you what was sexual in nature. You touching my legs, putting your hands on me, period.

(Funches Dep. 19:23–20:7, 100:24–101:3; Defs.' L.R. 56.1 Statement ¶ 57.) Thus, even taking Funches's testimony in the light most favorable to him, it is not reasonably disputable that the pat-down search Hermeyer conducted on June 11, 2018, was just that—a pat-down search, and nothing more. *See Rivera v. Schultz*, 556 F. App'x 500, 502 (7th Cir. 2014) (unpublished) (affirming judgment as a matter of law dismissing Eighth Amendment claim arising from "a properly authorized pat-down," where "[n]o jury reasonably could find on this evidence that [defendant] conducted the pat-down in a harassing manner designed to humiliate [plaintiff] and cause him psychological pain"). Funches's Eighth Amendment claim is dismissed.

### B.   Fourth Amendment

The Fourth Amendment "protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Henry*, 969 F.3d at 781 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Unlike the Eighth Amendment, this "reasonableness" standard is objective, meaning that "a defendant's subjective state of mind is irrelevant to a court's Fourth Amendment analysis." *Id.* Even under this standard, however, Funches' claim fails.

It is indisputable that the pat-down search was performed in the service of some institutional objectives. By sworn declaration, Hermeyer stated that he "searched Mr. Funches for security and safety reasons, including the need to find any contraband, which is a threat to the safety of staff and inmates" (Hermeyer Decl. ¶ 54.) *See Jones v. DeGrave*, No. 22-2123, 2024 WL 1988835, at *2–3 (7th Cir. May 6, 2024) (affirming summary judgment dismissal of Fourth Amendment claim for search intended to find hidden contraband). Furthermore, Hermeyer suspected that "Funches may have been stealing frames" from the Lab. (*Id.* ¶ 39.)

8

The question, then, is whether there is evidence from which a reasonable jury could find that Hermeyer performed the pat-down search "in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." See Henry, 969 F.3d at 781. The answer is no. As discussed earlier, Funches has presented no evidence that Hermeyer "was motivated, even in part, by an impermissible objective purpose." Jones, 2024 WL 1988835, at *3. Nor is there any suggestion that the search was conducted in an unreasonable place.[2] As to the reasonableness of the manner in which Hermeyer conducted the search, the evidence suggests that the June 11 pat-down was performed in accordance with IDOC policy, by using "a bladed-hand search" that may have resulted only "in incidental contact with the genital region." (Defs.' L.R. 56.1 Statement ¶¶ 60–63.) While following standard procedures does not necessarily mean that a search is reasonable, see United States v. Brown, 871 F.3d 532, 537 (7th Cir. 2017) (explaining that "compliance with departmental policy" is "neither sufficient nor necessary to satisfy the Fourth Amendment's reasonableness requirement"), Funches has not proffered any evidence or made any argument to suggest that routine pat-down searches in prisons are per se unreasonable.

Because Hermeyer's pat-down search of Funches on June 11, 2018 was performed in a reasonable manner, at a reasonable place, and with a reasonable purpose, Funches's sexual assault claim also fails under the Fourth Amendment.

### III. First Amendment Retaliation Claim

To establish a claim of retaliation in violation of the First Amendment, a plaintiff must establish "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (quoting Woodruff v.

---

[2] Pat-down searches "were conducted daily" as prisoners left the "Optical Lab at the completion of the workday" in the presence of 40 to 50 "workers in line waiting to be searched." (Defs.' L.R. 56.1 Statement ¶¶ 12–13, 39; Hermeyer Decl. [90-3] ¶ 42.)

*Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Courts "should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (cleaned up). Ultimately, the question "is whether events would have transpired differently absent the retaliatory motive . . . ." *Id.* (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).

The crux of Funches's retaliation claim is that, after he confronted Melvin and Hermeyer about the operating schedule and filed the grievance complaining that he had not received enough work hours to earn full credits, Hermeyer and Melvin retaliated against him by "ransack[ing]" his cell, transferring him to a different department within the Lab, sexually assaulting him via pat-down search, awarding him fewer credits than he deserved, and terminating his participation in the program. (Compl. at 9, 12, 14–16.)

The court assumes for purposes of this analysis that Funches's complaints to Melvin and Hermeyer about the operating schedule and his April 27 grievance constitute protected speech. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) ("A prisoner has a First Amendment right to make grievances about conditions of confinement."). His retaliation claim falters, however, on the remaining elements: deprivation and causation. First, there is no evidence that Funches' confrontation with Hermeyer on April 12 was a motivating factor in the shakedown of his cell on April 18. Funches alleges that the officer who tossed his cell "was acting on behalf of" Hermeyer "because [Funches] had been inquiring about the awarding of his good time credits." (Compl. At 12.) Such an allegation may be sufficient at the pleadings stage, for intent may be pled generally, *see* FED. R. CIV. P. 9(b), but more than mere "speculation regarding . . . motive" is needed to survive a motion for summary judgment, *Montanez v. Butler*, No. 14-CV-754-MJR-SCW, 2017 WL 1425943, at *3 (S.D. Ill. Apr. 21, 2017); *see also Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

As to Funches' transfer to a different department within the Lab in early June, the only evidence in the record on this issue is Defendants' sworn statements that Funches was transferred because he was suspected of "misappropriating, misplacing, or stealing frames." (Defs.' L.R. 56.1 Statement ¶ 35.) Again, Funches may allege that his transfer was an "act of retaliation" on the part of Hermeyer, but he provides no admissible evidence to support that allegation or rebut Defendants' alternative explanation. *Cf. German v. Jeffreys*, No. 3:22-CV-01352-SMY, 2022 WL 10479084, at *4 (S.D. Ill. Oct. 18, 2022) ("To state a retaliatory transfer claim, plaintiff must set forth a chronology of events from which retaliation may be inferred." (citing *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir.1987))). To the contrary, the only available evidence establishes legitimate penological motivations for the transfer. Nor can the June 11 pat-down search be characterized as an act of retaliation: as already explained, the incident was a routine pat-down search. Based on Defendants' uncontroverted statements, there was no sexual element to the search, and it was motivated by legitimate penological interests.

Funches also suggests he was denied credits and removed from the work program in retaliation for his speech, but that claim fails as well. Start with the 75 credits Funches was awarded on April 1: Funches may believe that he was entitled to 90 credits, but the fact that he did not engage in any arguably protected speech until April 12 means that this 15-credit reduction cannot be retaliatory.

Funches was next awarded 52 credits on June 30. The court observes, first, that under Illinois law, a prisoner who, like Funches, was convicted before 1998, is "only entitled to a maximum of 90 days' [credits]." *Hains v. Jeffreys*, 2022 IL App (4th) 220077-U ¶ 13, 2022 WL 17702838, at *4 (4th Dist. Dec. 15, 2022) (construing language in the 2021 version of 730 ILCS 5/3-6-3, which is unchanged from the 2018 version of that statute operative in this case). Funches received a total of 127 credits, so he suffered no deprivation in not receiving the other 38 for which he had contracted on April 2. Furthermore, there were legitimate penological interests relating to the reduction of Funches's work hours: a decline in demand for the Lab's products resulted in a

11

reduction in the overall operating schedule, and Funches was removed from the Lab during an investigation of his allegations of sexual assault. These circumstances undermine any inference that the reduced award was retaliatory. *See Babcock*, 102 F.3d at 275 (deference due "to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory").

Finally, Funches' termination from the work program cannot reasonably be viewed as an act of retaliation on the part of Defendants, for neither Melvin nor Hermeyer was responsible for that decision. To the contrary, there was evidence that Defendants were amenable to keeping Funches in the program so that he could earn more credits, and that the decision to terminate his participation went against their wishes.

## **CONCLUSION**

Defendants' motion for summary judgment [89] is granted. Final judgment will be entered. If Plaintiff wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* FED. R. APP. P. 4(a)(1). If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court stating the issues he intends to present on appeal. *See* FED. R. APP. P. 24(a)(1).[3]

ENTER:

Date: August 21, 2024

_____
REBECCA R. PALLMEYER
United States District Judge

---

[3] Plaintiff need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if Plaintiff wishes the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* FED. R. CIV. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* FED. R. CIV. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* FED. R. APP. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* FED. R. CIV. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* FED. R. CIV. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* FED. R. APP. P. 4(a)(4)(A)(vi).